FILED IN UNITED STATES DISTRICT
COURT, DISTRICT OF UTAH

MAR 2 7 2008

D. MARK JONES, CLERK
BY
DEPUTY CLERK

IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

|  |  |
|---|---|
| ROBIN SANDERSON,<br><br>Plaintiff,<br><br><br>vs.<br><br><br>MICHAEL J. ASTRUE, Commissioner of Social Security,<br><br>Defendant. | **MEMORANDUM OPINION AND ORDER**<br><br><br><br><br>Case No. 2:06-CV-00990 DB |

Robin Sanderson brought this action pursuant to 42 U.S.C. § 405(g) and 1383(c)(3), which provide for judicial review of the final decision of the defendant, Michael J. Astrue, the Commissioner of Social Security. Ms. Sanderson appeals the administrative decision that denied her application for Disability Insurance Benefits and Supplemental Security Income (SSI). For the reasons explained below, the court AFFIRMS the Commissioner's decision and DENIES Ms. Sanderson's petition for review.

**PROCEDURAL HISTORY**

Ms. Sanderson is a 50-year-old woman, who was 42-years-old at the date of her first disability claim. Ms. Sanderson filed an application for Disability Insurance Benefits on September 26, 2003. (T. 57.) Her claim was initially denied on January 21, 2004. (T. 49,) and

upon reconsideration on April 23, 2004. (T. 43.)  Ms. Sanderson timely requested a hearing

before an Administrative Law Judge ("ALJ") on May 5, 2004.  (T. 40.)

A hearing was held on April 12, 2005, in Cedar City, Utah, before Judge G. Alejandro

Martinez. (T.15.) On February 16, 2006, the ALJ issued a decision finding Ms. Sanderson not

disabled.  (T. 23.) The ALJ found that Ms. Sanderson's obesity and mild degenerative disc

disease were "severe" impairments, but that these impairments did not meet or medically equal

any of the listed impairments contained in the C.F.R.  (T. 17, 19, Findings 3 and 4.)  The ALJ

determined that Ms. Sanderson had the residual functional capacity (RFC) to

> perform sedentary work with lifting 10 pounds occasionally and 10 pounds
> frequently; sitting 1-2 hours at a time, up to 6 hours in an eight hour workday;
> standing 1 hour at a time, up to 4 hours in an eight hour work day; occasionally
> walking, climbing stairs, squatting, bending, stopping, kneeling, reaching above
> shoulders, pushing/pulling, using foot controls, and driving; frequently turning
> arms and wrists, opening and clos[ing] fists, and using hands and fingers;
> continuously balancing; no limitations in grip strength, fine dexterity, or manual
> dexterity; and mild limitations in concentration due to pain.

(T. 20.)  The ALJ concluded that she could not perform her past relevant work.  (T. 22.)  The

vocational expert testified that Ms. Sanderson could perform other work available in the national

economy, such as general clerk or assembler.  Therefore, the ALJ found Ms. Sanderson was not

disabled within the meaning of the Act, and denied her application.  (T. 22, Findings 6 and 10.)

Ms. Sanderson timely requested review by the Appeals Council on February 21, 2006 (T. 11).

The Appeals Council denied Ms. Sanderson's request for review on September 27, 2006. (T. 4).

This Appeals Council denial was the final administrative decision of the Commissioner of Social

Security in this case.  Thus, the ALJ decision stands as the final decision of the Commissioner.

## MEDICAL HISTORY

Ms. Sanderson previously worked as a cashier, hospital housekeeper, certified nursing assistant, cook, and child care provider. Each position required an unskilled or semi-skilled capacity to be employed. Ms. Sanderson injured her low back in the early 1990's. She has received extensive medical treatment to fuse sections of her spine and has been diagnosed as having degenerative disc disease. Additionally, Ms. Sanderson was diagnosed with colon cancer in April 2000 and complains of neuropathy in her lower back and legs and diabetes. (T. 55 and 88.) Dr. Richard Wintch discovered a mass in Ms. Sanderson's colon and performed surgery on April 15, 1999, to remove the mass. (T. 99, 141-42.) Ms. Sanderson was released from the hospital, having stayed for a normal recovery period, on April 21, 1999. (T. 98.)

Later that year, on June 26, 1999, Ms. Sanderson complained to Dr. Chamberlain of lower back, right hip, and left thigh pain. (T. 220.) Two days later, June 28, 1999, Dr. Wintch noted that Ms. Sanderson had completed two sessions of chemotherapy and that she was "ambulating well and looks great," with a notation that he would not see her again until November. (T. 104.)

In September, 1999, Ms. Sanderson's x-rays revealed no acute abnormalities. (T. 130.) Nevertheless, on November 26, 1999, a bone scan showed "some" degenerative change in Ms. Sanderson's lower spine and some arthritic changes. (T. 128.) On November 30, 1999, an MRI of Ms. Sanderson's spine revealed multi-level desiccation and degeneration, although there was no evidence of metastitic disease. (T. 127.)

During 2000, Ms. Sanderson received medical treatment on five recorded occasions. She had an endoscopy on March 1, 2000, which was normal. (T. 124-125.) Later that same year, on

3

December 29, 2000, Ms. Sanderson underwent a colonoscopy, which revealed no evidence of recurrent cancer. (T-113-14.) Ms. Sanderson complained of back and leg pain three times – in June, November and December. (T. 220, 217-18.) The next diagnostic finding came on June 27, 2001, six months after the date last insured. At that time, Dr. Chamberlain diagnosed Ms. Sanderson with Type II diabetes. (T. 210.)

Under the Social Security Act, December 31, 2000, is the date Ms. Sanderson was last insured. The Record is replete with medical visits occurring after that date. The Court, however, will not refer to, nor cite any medical records after December 31, 2000, because they occurred past the date insured and are therefore, irrelevant to these proceedings. Furthermore, Dr. Chamberlain, Ms. Sanderson's treating physician, did not diagnose or make medical record of any disability prior to December 31, 2000. Moreover, the medical expert, Dr. Pearson, testified that Ms. Sanderson did not meet a disability under several possible listings (cancer, diabetes, asthma, lower back disorder or peripheral neuropathy) between April 1999 and December 2000. (T. 343-45.)

## STANDARD OF REVIEW

The parties agree that Ms. Sanderson met the earnings requirements of the Social Security Act, only through December 31, 2000. (Plaintiff's Brief in Support at p. 13, Defendant's Answer Brief at p. 11.) The court reviews the Commissioner's decision to determine whether substantial evidence in the record as a whole supports the factual findings and whether the correct legal standards were applied. See Castellano v. Sec'y of Health & Human Servs., 26 F.2d 1027, 1028 (10th Cir. 1992). Substantial evidence is such relevant evidence "as a reasonable mind might accept as adequate to support a conclusion." Hamilton v. Sec'y of Health & Human Servs., 961

4

F.2d 1495, 1498 (10th Cir. 1992) (citations and internal quotation marks omitted). The court may neither reweigh the evidence nor substitute its discretion for that of the ALJ. Kelley v. Chater, 62 F.3d 335, 337 (10th Cir. 1995); see also White v. Massanari, 271 F.3d 1256, 1257, 1260-61 (10th Cir. 2001). Where the evidence as a whole can support either the Commissioner's decision or an award of benefits, the Commissioner's decision must be affirmed. See Ellison v. Sullivan, 929 F.2d 534, 536 (10th Cir. 1990).

Therefore, in order to receive benefits, Ms. Sanderson must establish her disability prior to December 31, 2000. See Henrie v. United States Dept. of Heath & Human Servs., 13 F.3d 359, 360 (10th Cir. 1993). Under the Social Security Act, the Social Security Administration is authorized to pay disability insurance benefits only to persons who have a "disability," as defined by the Act. A person is disabled only if her "physical or mental impairment or impairments are of such severity that [s]he is not only unable to do his previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). Additionally, a person must demonstrate a physical impairment which is expected to result in death or to last 12 or more continuous months. See 42 U.S.C. § 423(d)(1)(A)(2)(5).

In evaluating a claim for disability, the Commissioner considers, in sequence, whether the claimant: (1) worked during the alleged period of disability; (2) had a severe impairment; (3) had a condition which met or equaled the severity of a listed impairment; (4) could return to her past relevant work; and (5) if not, whether she could perform other work in the national economy. See C.F.R. § 404.1520; Williams v. Bowen, 844 F.2d 748, 750-51 (10th Cir. 1998) (discussing steps in the sequential evaluation process). In addition, Ms. Sanderson has the burden of proof to

show she was disabled prior to December 31, 2000, the date she was last insured under the Act.
See C.F.R. § 404.131; Adams v. Charter, 93 F.3d 712, 714 (10th Cir. 1996), Younger ex rel.
Younger v. Shalala, 30 F.3d 1265, 1269 (10th Cir. 1994). Neither party asserts the ALJ erred in
utilizing the five-step analysis, and Ms. Sanderson exclusively alleges the ALJ failed to consider
presented medical evidence.

## DISCUSSION

Plaintiff raises two allegations regarding her denial of social security benefits: first, that
the ALJ failed to consider the 2005 Residual Functional Capacity questionnaire by Dr.
Chamberlain, and second, that the ALJ failed to consider Dr. Keith Pearson's medical testimony.

     a.     *The ALJ decision is supported by substantial evidence because the ALJ*
          *adequately considered all relevant medical history.*

To determine whether the ALJ did or did not consider a single questionnaire by one
physician is not for this Court to determine. This Court must analyze the record as a whole. *See*
Castellano, 26 F.2d at 1028. By reviewing a litany of medical records, the ALJ sufficiently
considered the Residual Functional Capacity Questionnaire prepared by Dr. Howard
Chamberlain and concluded that the Questionnaire was not consistent with the other medical
records. (T. 21.) See Doyle v. Barnhart, 331 F.3d 758, 781 (10th Cir. 2003) (holding that the
ALJ properly rejected a physician's opinion that was inconsistent with the record as a whole). In
the Questionnaire, dated April 7, 2005, Dr. Chamberlain opined that Ms. Sanderson had suffered
from extreme functional limitations since 1998. This Questionnaire is critical for two reasons.
First, Dr. Chamberlain's retrospective opinion does not correspond with the medical records
produced for that time period. Secondly, the Questionnaire was completed over four years after

6

Ms. Sanderson's last insured date. The ALJ gave little weight to Dr. Chamberlain's credibility, finding "that the claimant did not have all these limitations prior to her alleged onset date, as she was working at Wal-Mart as a cashier (light work). This part of Dr. Chamberlain's opinion impacts negatively on his credibility." (T. 21.) The ALJ determined the few visits Ms. Sanderson had with Dr. Chamberlain could not be sufficient to create an "ongoing basis between April 1999 and December 2000." (*Id.*) Secondly, the ALJ opined that the 2005 Questionnaire was "not consistent with the claimant's minimal treatment during the relevant period." (*Id.*)

Ms. Sanderson argues that Dr. Chamberlain's peripheral neuropathy diagnosis must be a result of the chemotherapy treatments she received during 1999 and 2000. (T. 305.) This argument is flawed because there are no supporting medical records. Quite the opposite, a test done in October 2001, found only peripheral neuropathy of the left peroneal nerve. (T. 160.) The same test was performed in May 2002 and found "mild" peripheral neuropathy. (T. 154.) These medical records show that Ms. Sanderson could not have had severe neuropathy during the relevant time period. For these reasons, this Court finds substantial evidence that the ALJ properly determined Dr. Chamberlain's conclusions in the Questionnaire were not consistent with Ms. Sanderson's medical records and therefore, have little weight to the ALJ's decision.

Most notably are Ms. Sanderson's own admissions. First, she concurs that "little documentary evidence on the record clearly established that Ms. Sanderson suffered painful and debilitating neuropathy following her chemotherapy in October 1999, until June of 2000 when medical notes and records first show it." (Plaintiff's Brief in Support of Petition for Review, p. 10.) If there is "little evidence of neuropathy" on the record more than six months before the date last insured, Ms. Sanderson is admitting that there is not *substantial* evidence to support a

7

disability finding. Finally, Ms. Sanderson ignores the tardiness of the Questionnaire by completely omitting the date when she discusses the same in her brief. Without any response by Ms. Sanderson to counter the Defendant's position, this Court has no opposing argument to consider, therefore concluding there is substantial evidence to support the ALJ's findings and affirms the ALJ's decision to give little weight to the Questionnaire.

        b.     *The Administrative Law Judge considered the testimony of medical expert, Keith Pearson, to the extent that Dr. Pearson's testimony was relevant to the final decision.*

Ms. Sanderson also argues that the ALJ violated the treating physician rule in evaluating her claim by failing to consider Dr. Keith Pearson's testimony. A treating physician's opinion, in evaluating an individual's disability must be given great weight. However, an ALJ does not have to accept the opinion of a treating physician that was not based on, or was inconsistent with, actual clinical findings. See White, 271 F.3d at 1260-61; Castellano, 26 F.3d at 1029; (20 C.F.R. §§ 404.1527, 416.927).

Dr. Keith Pearson, a medical expert, testified that Ms. Sanderson met a listing of 1.04 as of May 2002, one year and five months after the December 31, 2000 cut-off date. (T. 20.) The Tenth Circuit admonishes this court not to "reach the question of what weight must be given to a treating physician's retrospective opinion that a claimant was disabled." Adams, 93 F.3d at 715. See also Potter v. Sec'y of Health & Human Servs., 905 F.2d 1346, 1348-49 (finding a retrospective diagnosis several years after the time at issue would be of very limited utility); Coleman v. Chater, 58 F.3d 577, 579 (10th Cir. 1995) (determining "a retrospective diagnosis without evidence of actual disability is insufficient"). "Credibility determinations are peculiarly the province of the finder of fact, and we will not upset such determinations when supported by

8

substantial evidence." Hackett v. Barnhart, 395 F.3d 1168, 1173 (10th Cir. 2005). Moreover,

"findings as to credibility should be closely and affirmatively linked to substantial evidence and

not just a conclusion in the guise of findings." Kepler v. Chater, 68 F.3d 387, 391 (10th Cir.

1995). "So long as the ALJ sets forth the specific evidence he relies on in evaluating the

claimant's credibility, the dictates of Kepler are satisfied." Qualls v. Apfel, 206 F.3d 1368, 1372

(10th Cir. 2000).

Here, the ALJ thoroughly considered the record, including the testimony of a medical

expert, issued post-date last insured before concluding Dr. Pearson's testimony did not coincide

with the other medical history presented. The ALJ's reasons for discounting Dr. Pearson's

testimony are readily apparent within the ALJ's opinion, and are supported by the evidence. For

example, the ALJ concluded that Dr. Pearson's testimony was "irrelevant as it is addressing a

period after the claimant's date last insured and there is no evidence that relates the claimant's

medical condition and severity back to before December 31, 2000." (T. 20.) Furthermore, Ms.

Sanderson's own petition acknowledges Dr. Pearson's testimony that Ms. Sanderson met a

listing of 1.04 as of May, 2002, without explaining why this listing is relevant for the 1999-2000

time period. Given these specific findings, the Court concludes that the ALJ's credibility

determination is legally sufficient and supported by substantial evidence.

## CONCLUSION

In conclusion, this Court finds that the ALJ thoroughly reviewed the record, accepted

testimony, and evaluated the evidence to find that Ms. Sanderson was not disabled under the Act

prior to her date last insured and there were a significant number of jobs in the national economy

for Ms. Sanderson to earn a gainful employment as an office clerk or assembler. The Court

9

DENIES Ms. Sanderson's petition for review of the decision of the Commissioner. The clerk of the court is directed to CLOSE this case.

    SO ORDERED.

    Dated this _26th_ day of March, 2008.

                     BY THE COURT:

                     Dee Benson
                     United States District Court